# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Hope VanDross<br>3900 16th Street NW<br>#402<br>Washington, DC 20011 | PAGE COUNT 19 (INCLUDING EXHIBITS) |
| Plaintiff, | CASE NO._____ |
| v. | |
| Chronicle of Higher Education, Inc. (The)<br>1255 23rd Street NW, Ste. 700<br>Washington, DC 20037 | |
| ***Serve Registered Agent:***<br>Prentice-Hall Corporation System, Inc.<br>1090 Vermont Ave NW<br>Washington, DC 20005 | |
| Defendant. | |

## COMPLAINT

Plaintiff, Hope VanDross ("Ms. VanDross") by and through the undersigned, files this Complaint against Defendant, Chronicle of Higher Education, Inc., ("Employer" or "Chronicle"), for actual, compensatory, statutory, and punitive damages, and states as follows:

## INTRODUCTION

1.   Plaintiff, Hope VanDross, brings this complaint against Defendant, Chronicle for Higher Education, Inc., for violating Ms. VanDross's rights pursuant to Title VII of the Civil Rights Act of 1962, 42 U.S.C.S. § 2000e et seq. and the Age Discrimination in Employment Act of 1967, 29 U.S.C.S. § 623 et seq.

2.   Plaintiff, also brings this complaint against Defendant, Chronicle, for retaliating against Ms. VanDross for exercising her rights pursuant to Title VII of the Civil

1

Rights Act of 1962, 42 U.S.C.S. § 2000e et seq. and the Age Discrimination in Employment Act of 1967, 29 U.S.C.S. § 623 et seq.

## JURISDICTION AND VENUE

3.   This Court has subject-matter jurisdiction over the claims presented in the first, second, and third cause of action herein under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 pursuant to 42 U.S.C.S. § 2000e et seq. and 29 U.S.C.S. § 623 et seq.; and the amount in controversy is over $75,000.00.

4.   This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.S. § 2000e-2, based on race discrimination and retaliation; and the Age Discrimination Act of 1967, 29 U.S.C.S. § 623, based on age discrimination and retaliation.

5.   Venue is proper as the acts complained of herein occurred in the District of Columbia.

## PARTIES

6.   Ms. VanDross lives in Washington, DC at 3900 16th Street, NW, #402, Washington, DC 20011.

7.   Chronicle of Higher Education, Inc. (The) is a Delaware corporation conducting business in the District of Columbia, with a primary address of 1255 23rd Street, NW, Ste. 700, Washington, DC 20037, and a registered agent located at 1090 Vermont Ave, NW, Washington, DC 20005.

## STATEMENT OF FACTS

8.   The Chronicle of Higher Education is a newspaper and website that presents news, information, and jobs for college and university faculty and student affairs professionals.

9.   The Chronicle requires a subscription to read certain articles and publications.

10.     The Chronicle has the following publications: *The Chronicle of Higher Education*; *The Chronicle of Philanthropy*; *Arts & Letters Daily*; and *The Chronicle Review*.

11.     The Chronicle of Philanthropy is a magazine that covers the nonprofit world of philanthropy.

12.     The Chronicle of Philanthropy focuses on charity leaders, foundation executives, fund raisers and others involved in philanthropy.

13.     Ms. VanDross is a fifty-five-year-old, African-American Woman with over 20 years of national sales experience.

14.     Ms. VanDross was hired by The Chronical of Philanthropy ("COP")  on August 1, 2016 as an Institutional Sales Associate.

15.     The Institutional Sales Associate position was expected to cultivate and build the expanding site license business for the COP.  See Exhibit 1.

16.     The Institutional Sales Associate was responsible for managing existing site licenses and for building closing a robust pipeline of new business opportunities.

17.     The robust pipeline of business opportunities included institutions of higher education, non-profit organizations, hospital and healthcare systems and foundations.

18.     The Institutional Sales Associates position required Ms. VanDross to establish strong relationships with COP's institutional clients and meet and exceed sales and renewal objectives.

19.     Ms. VanDross was employed by the Chronicle on a full-time basis and began with a base salary of $58,000 annually plus 15% commission on new business and $750.00 quarterly bonus when renewals were 90% and above.

20.     In the 2019 fiscal year Ms. VanDross's employment, she was compensated on an annual basis at rate of $68,000.00 plus 15% commission and 1% on renewals.

**Performance**

21.     During her tenure at the COP Ms. VanDross received positive performance reviews as reflected in her 2017 and 2018 evaluations.

22.     During her tenure at the COP Ms. VanDross consistently met or exceeded her sales goals and objectives.

23.     In 2018, Ms. VanDross was promoted to the position of Institutional Sales Executive.

24.     For Fiscal Year 2017, Ms. VanDross received an excellent performance review and made a total of $116,039.00 in sales.

25.     For Fiscal Year 2018, Ms. VanDross received an excellent performance review and made a total of $130,251.00 in sales.

26.     October 2, 2019, Ms. VanDross sold the largest site license in COP history for over $40,000.

27.     For Fiscal Year 2019, Ms. VanDross sold a total of $151,497.00 in new business before her termination on October 31, 2019.

28.     Ms. VanDross's total sales for Fiscal Year 2019 missed her quota by less than $10,000, which she would have made if she was not terminated October 31, 2019.

29.     During her tenure at the COP Ms. Vandross surpassed the prior years' sales numbers each year she worked at the Chronicle.

**Derogatory Comments and Inappropriate Gestures**

30.     On December 1, 2017, Michael Sisk joined the Chronicle as Publisher and Chief Revenue Officer of the Chronicle of Higher Education and the Chronicle of Philanthropy.

31.     At the time of Mr. Sisk' hire, Ms. VanDross was employed as a Sales Associate.

32.     In April 2018, Ms. VanDross' hiring manager and supervisor, Elizabeth Kennedy, left the Chronicle.

33.    In November 2018, Ms. VanDross was promoted to Institutional Sales Executive and her base salary increased by almost 10% to $68,000 plus 15% commission.

34.    Ms. VanDross was promoted as recognition for her contributions to the COP.

35.    Despite her stellar performance, Ms. VanDross began to face derogatory comments and inappropriate gestures from Mr. Sisk.

36.    During meetings and in passing Mr. Sisk regularly referred to Ms. VanDross as "Sis" and "Kid."

37.    The "Sis" and "Kid" comments were directed at Ms. VanDross and other minorities.

38.    During formal meetings, Mr. Sisk gave Ms. VanDross a "fist bump" while giving non-minorities handshakes.

39.    On another occasion Mr. Sisk showed Ms. VanDross a video on his phone of a Janet Jackson concert he attended and insisted she looked like Janet Jackson, although she does not.

40.    These are derogatory terms when used in a corporate setting in reference to minorities and Ms. VanDross was demoralized by the comments and gestures.

**Isolation from The Team**

41.    In March of 2019, Amy Long was hired as Associate Publisher of Content Revenue for the Chronicle and also became Ms. VanDross immediate supervisor.

42.    From March of 2019 when Ms. Long was hired to the date of Ms. VanDross termination in October of 2019, Ms. Long only had five meetings with Ms. VanDross.

43.    This despite the fact Ms. VanDross was the second most senior person on the content revenue team.

44.    In contrast, Ms. Long met with younger non-minority employees on a daily basis.

45.     Ms. Long said good morning to non-minority employees on daily basis but ~~never~~ said good morning to Ms. VanDross on only a few occasions.

46.     Ms. Long had meetings with non-minority team members regarding their commissions, however, only sent Ms. VanDross emails regarding her commissions.

47.     Weekly and biweekly meetings were held and Ms. VanDross was not asked to contribute regarding site license subject matters although she was the most senior for site licenses.

48.     Ms. Long left out site license information handled by Ms. VanDross during monthly meetings conducted by Mr. Sisk.

49.     Ms. Long held large full Chronicle staff meetings to discuss what her "team" was working on and Ms. VanDross site licenses was left out of the meetings.

50.     Ms. Long held separate meetings, away from the larger team, with Ms. VanDross and George Young, the only two African American team members.

51.     During monthly meetings with Mr. Sisk, Ms. VanDross site license contribution was no longer asked for or relayed as previously done before Ms. Long was hired.

52.     After Ms. Long's hire, non-minority contributions to the team were discussed during monthly meetings with Mr. Sisk.

53.     Site licenses was not given an advertising and marketing budget so they could grow and conduct business development, as with other sales teams within the Chronicle.

54.     Work related social gatherings were held by Ms. Long that Ms. VanDross was not invited to.

55.     Ms. Long only invited younger, non-minority team members to social, work gatherings instead of inviting her entire team.

56.     Non-minorities were given promotions and awards while Ms. VanDross was not.

**Meeting with Human Resources**

57.    On July 22, 2019, Ms. VanDross met with Ms. Long and Senior Human Resources
       Manager Leighann Ransom to discuss Ms. VanDross feelings of isolation and feeling
       she was not "part of the team" due to her race and age.

58.    Ms. VanDross was told contend? Ms. Long was busy developing a 5-year content
       strategy which kept her busy and her lack of interaction with Ms. VanDross had
       nothing to do with race or age.

**Promotions and Awards for Non-Minority Employees**

59.    During the relevant time period there were eight people on the Content Revenue team
       with Amy Long in charge of the team.

60.    Erin Gajansa, from marketing was second in line behind Amy Long.

61.    On or around July 19, 2019, a younger white male Content Revenue team member
       was promoted to an unpublished manager position with no managerial experience and
       without having to interview.

62.    On or around July 19, 2019, a younger white female Content Revenue team member
       was promoted to an unpublished position after nine months with the Chronicle,
       without having to interview.

63.    On or around July 9, 2019, a younger white female Content Revenue team member
       was promoted to an unpublished position which was her third promotion since Ms.
       VanDross' tenure, without an interview.

64.    On or around March 2018, George Young an African American male was hired by
       the Chronicle as an associate for site licenses and trained by Ms. VanDross.

65.    During his tenure, Mr. Young was passed over for promotions and almost terminated.

**Director of Institutional Sales and Engagement Position**

66.     During her tenure with the COP Ms. VanDross applied for numerous promotions
        including the Director, Institutional Sales and Engagement (DISE) position.

67.     Beginning in April of 2019, Ms. VanDross inquired regarding the DISE position.

68.     The DISE position was responsible for driving institutional site license, group
        subscription and premium product content sales by acquiring and retaining university,
        nonprofit, and corporate clients. See Exhibit 2.

69.     The DISE position required an individual who could maintain and grow The
        Chronicle's market share.

70.     The DISE position leads a sales team within site licenses ~~the COP~~ and an
        Engagement Manager and reports to Amy Long the Associate Publisher, Content
        Revenue.

71.     The core functions and duties of the DISE position are the same as the Institutional
        Sales Executive position.

72.     On October 22, 2019, Ms. VanDross was asked by Ms. Long and Ms. Ransom to
        interview for the DISE position.

73.     Ms. VanDross was interviewed by Ms. Long and Ms. Ransom from Human
        Resources.

74.     In addition to her years of experience Ms. VanDross credentials for the DISE position
        included: Selling both CHE and COP successfully including creation of national
        pricing for both, training George Young in COP sales, creation of sales plans for COP
        submitted to Mr. Sisk, creation of email "content" for business development and
        creation of COP strategic plan to increase and grow sales.

75.     During the interview process Ms. VanDross was asked her method for locating
        potential client leads, how she determines strategies to grow business, her process for
        closing large deals, her methodology for client outreach, her process for locating

potential client, her method for determining pricing and what events she attended for business development.

76. Ms. Long and Ms. Ransom harvested a blue print from Ms. VanDross to be used in the DISE position.

77. On October 23, 2020, Ms. VanDross received an email from Hallie Hoffman, and Amy Long requesting she informally the duties of the DISE position informally.

78. On October 28, 2019, Ms. VanDross informed Ms. Ransom she was not comfortable performing all of the duties of the DISE without formally being promoted to the position.

79. On or around October 29, 2019, Ms. VanDross was informed she was not selected for the DISE position.

80. Ms. VanDross was informed she lacked the "vision" and "leadership" credentials required for the position.

81. On October 31, 2019, the last day of the fiscal year, Ms. VanDross was informed her position was being eliminated.

82. The reason for the elimination of Ms. VanDross position was due to alleged lower revenue conditions for the COP and lower sales by Ms. VanDross.

83. On October 31, 2019, Ms. VanDross received a severance letter confirming and outlining the Chronicle's offer concerning Ms. VanDross's forced separation from the Chronicle.

84. During Ms. VanDross's three plus years at the Chronicle, she met or exceeded her sales goals, including closing on a variety of new businesses with a variety of large organizations.

85. Following Ms. VanDross termination from the COP, a younger white female was hired to fill the DISE position.

86.    The newly hired DISE has less than half of Ms. VanDross experience.

**EEOC Charges Filed**

87.    Subsequent to her termination, Ms. VanDross filed a charge of discrimination against The Chronicle with the EEOC.

88.    The basis of the EEOC charge was race, sex, age and retaliation.

89.    On September 11, 2020, Ms. VanDross was issued a Right to Sue letter for this matter.  See Exhibit 3.

<u>Count I</u>

**<u>Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq.</u>**
**<u>Race Discrimination</u>**

90.    Ms. VanDross incorporates by references all of the preceding paragraphs of this Complaint as if fully restated herein.

91.    At all times, Defendant Chronicle was an employer subject to the provisions of Title VII of the Civil Rights Act of 1964.

92.    At all pertinent times, Plaintiff was entitled to protection under the Title VII of the Civil Rights Act of 1964.

93.    Plaintiff is a member of a protected class due to her race (African-American).

94.    Plaintiff was qualified for her position based on the excellent performance evaluations she received.

95.    Defendant, Chronicle of Higher Education, Inc., through its employees and agents, violated the non-discrimination mandates of Title VII by discriminating against Plaintiff as a result of her race.

96.    Defendant, Chronicle of Higher Education, Inc., through its employees and agents discriminated against Plaintiff on the basis of race by treating her differently from and less preferably than similarly situated non-black employees, in violation of Title VII.

97.    Based on her race, Plaintiff was subjected to derogatory comments such as being called "Sis" and "Kid" by her supervisor Mr. Sisk.

10

98.     Based on her race Plaintiff was subjected to derogatory gestures including "fist bumps" instead of handshakes by her supervisor Mr. Sisk during meetings.

99.     Based on her race Plaintiff was isolated from the COP team by her supervisor Ms. Long, had far fewer meetings with her immediate supervisor than her non-minority colleagues, not allowed to contribute site license information during weekly/bi-weekly meetings, not invited to social gatherings and not allowed to contribute during monthly team meetings.

100.    Based on her race Ms. VanDross was passed over for promotions including for the DISE position.

101.    Based on her race Ms. VanDross was terminated when she refused to provide the work of the DISE position on an informal basis.

102.    The Chronicle's failure to promote Ms. Vandross and Ms. VanDross's termination were a pretext for unlawful discrimination.

103.    This mistreatment of Plaintiff was and is directly related to Plaintiff's race, insofar as her race was the direct cause of the discrimination and termination.

104.    As a result of Defendant's actions, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and, in all probability, will continue to suffer in the future.

## Count II

**Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C.S. § 623 et seq.**

### Age Discrimination

105.    Ms. VanDross incorporates by references all of the preceding paragraphs of this Complaint as if fully restated herein.

106.    At all times, Defendant, Chronicle was an employer subject to the provisions of the Age Discrimination in Employment Act of 1967 ("ADEA").

107. Defendant, Chronicle of Higher Education, Inc., through its employees and agents, violated the non-discrimination mandates of the ADEA by discriminating against Plaintiff as a result of her actual or perceived age (55 years old).

108. As stated in this complaint Ms. Vandross was qualified for her position and received excellent performance evaluations.

109. From March 2019 to October 2019, or Amy Long's hire date to Ms. VanDross's termination date, Ms. Long only met with Ms. VanDross a total of five times, despite Ms. VanDross being the second-most senior person on the content revenue team.

110. Ms. Long met with younger employees on a daily basis but not with Ms. VanDross.

111. Ms. Long had social gatherings with younger employs while excluding Ms. VanDross.

112. Younger employees were not required to interview for promotions while Ms. VanDross was required to interview.

113. Younger, white employees were promoted regularly and frequently while Ms. VanDross was only promoted once before Ms. Long became her supervisor.

114. The Chronicle terminated Ms. VanDross and hired a younger woman with half her experience for the DISE position.

115. Plaintiff's age was the direct cause of her termination.

116. As a result of Defendant's action, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and, in all probability, will continue to suffer in the future.

## Count III

### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C.S. § 623 et seq.

### UNLAWFUL RETALIATION

117. Plaintiff incorporates by reference each and every allegation in all of the preceding paragraphs of this Complaint as if fully restated herein.

118.   At all times, Defendant Chronicle was an employer subject to the provisions of Title VII and the ADEA.

119.   During her tenure with the Chronicle, Ms. VanDross endured derogatory comments, isolation and had been passed over for promotion based on her age and race.

120.   Ms. VanDross engaged in a protect activity on July 22, 2019, Ms. VanDross met with Ms. Long and a Senior Human Resources manager, Leighann Ransom to address Ms. VanDross's feelings of isolation, hostility, and general feeling of unwelcomeness due to Ms. VanDross's race and age.

121.   Defendant had knowledge of Ms. VanDross claims for discrimination based on the July 22, 2019 meeting.

122.   On October 31, 2019 in retaliation for Ms. VanDross reporting the discrimination she faced, she was told her position was eliminated and terminated.

123.   In fact, Ms. VanDross's position was not eliminated, and a younger, white applicant was hired to do her job with a higher salary.

124.   Plaintiff was wrongfully discharged for engaging in a protected activity by complaining to management and human resources regarding the unlawful discrimination she faced.

125.   Ms. VanDross's termination was a pretext for unlawful retaliation and discrimination.

126.   As a result of Defendant's action, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and, in all probability, will continue to suffer in the future.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment awarding Plaintiff:

   a.   Actual damages and liquidated damages for the period of time provided by law, including appropriate back pay, front pay, and reimbursement for lost pension, insurance and all other benefits for all counts;

   b.   Compensatory damages and liquidated damages in the amount of one hundred thousand dollars ($100,000) per count for all counts;

   c.   Attorneys' fees;

d.  Expert witness fees incurred by Plaintiff in the preparation and prosecution of this action;

e.  Pre-judgment and post-judgment interest as allowed by law;

f.  Costs of court and costs of prosecuting this claim; and Such other and further relief to which Plaintiff may be justly entitled.

g.  But to award no less than four hundred and fifty thousand dollars ($400,000) in total damages and costs.

DATED:  December 10, 2020

Respectfully Submitted,

/s/_____
Ryan A. Hintzen, Esq.
Bar No. 495538
The Hintzen Law Firm
601 Pennsylvania Ave., Ste. 900
Washington, DC  20004
P: 202-638-6988
F: 202-639-8238
ryan@hintzenlf.com

*Attorney for Plaintiff*

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues triable as such.

Respectfully Submitted,

/s/

_____
Ryan A. Hintzen, Esq.
Bar No. 495538
The Hintzen Law Firm
601 Pennsylvania Ave., South Building
Suite 900
Washington, DC  20004
P: 202-638-6988

F: 202-639-8238
ryan@hintzenlf.com

*Attorney for Plaintiff*